By the Court.
Campbell, J.
There, is no doubt that the promissory notes were taken by Rhodes in payment for the goods of the plaintiff’s, and that the latter are entitled to the proceeds, unless Victor Crassous in his lifetime became a bona fide holder of them for val he. We may concede the law to be, as laid down by the referee, that possession of negotiable paper is prima facie evidence of honesty in obtaining it. But the difficulty on the part of the defendant Thebaud is this. The notes are shown by his own admissions to have been placed yn the hands of Victor Crassous, for the purpose of enabling Crassous !to get them discounted for Rhodes. A possession, unaccompanied by ownership, is first shown. Thebaud adds, that Crassous agreed subsequently to discount them, and he has been informed and believes that Crassous afterwards discounted them. He was present when the notes were delivered to Crassous for him to get them discounted, but only knows from information that Crassous afterwards discounted’ them himself. From whom the information was derived, and when, does not appear. As then Crassous came into possession merely as a bailee, and as there is no evidence of the payment of any consideration, except the statement of Thebaud, derived from information, we might, perhaps, consider the question as disposed of.
But did Victor Crassous, in point of fact, discount those notes and pay the proceeds over to Rhodes? We are free to say that we think he did not. This transaction is alleged to have taken place at Crassous & Thebaud’s place of business, on the 19th of *100 September, 1846. On tbe 2d of December, Crassous died in-: testate, and on the 9th of January, 1847, letters of administration-on his goods and chattels were granted to the defendant Thebaud, who was his-partner and brother-in-law.
Under the provisions of the statute, (2 E. S. 77, § 42,) Thebaud was examined on oath touching the value of the personal prop-'erty of which Crassous died possessed; and after stating that the intestate was his brother-in-law, -.he says, “ that said deceased died a natural death, and died possessed of certain personal property in the State of New York, the value whereof does not exceed the sum of about three hundred dollars, as I have been informed and believeThe explanation which Thebaud makes, that he was mistaken in the law, and supposed he must give an account only of the property which would remain after the payment of the debts, is not satisfactory. Ée was not only examined on oath, but gave a bond in the penalty of six hundred dollars, with two sureties. Whether any other person was examined as to the value of the property does not appear. But the proceedings were regular and formal, and we must presume that the surrogate took the bond according to law, in a penalty double the. amount of personal property of which the intestate died possessed. It is true, that in November, 1847, some ten months, afterwards, and when, perhaps, the importance of this matter was seen, another bond was filed, in the penalty of three thousand dollars, and which the clerk from the surrogate’s office spoke of on his examination before the referee as purporting “ to be an administration bond in the penal sum of $8000 by the said, Eugene S. Thebaud and Joseph Bouchaud, with the name of one surety, Edmund Thebaud, but that he had not signed or-justified.” As remarked, the defendant Thebaud was the bro-; ther-in-law and partner of Yictor Crassous, and Crassous kept, the banking account of the firm, as well as his own, in his indi-; vidual name. The alleged discount took place on the 19th of September; on the 16th November, Crassous was seized with the fatal illness of which he died. When the notes were placed; in his hands, he reported that he could not get them discounted, and. yet, according to Thebaud’s information, Crassous, whose' *101 estate according to his own construction of his affidavit, on the 9th of January following, amounted to only $800, after a little persuasion discounted the notes at simple interest, though he had been un,able to sell' them in Wall-street, ands he must therefore have paid over to Rhodes* between three and four .thousand dollars. It seems to us that if this had been so, The-baud could have .given better evidence of. it than is contained in his answer that he is informed and believes that Crassous discounted the notes. In answer then, to the question, when was .Thebaud informed that Crassous discounted the notes, we are •constrained to say, that in our judgment, it must have been after Crassous’ death. By whom' he was informed would only be matter of. conjecture. Rhodes died without having answered .the bill. At the time of this transaction one of the plaintiffs was in New York, where he had- arrived from England, and was pressing Rhodes for a settlement and payment of the large balance due them. What could have been the real object of Rhodes, in leaving these notes in the possession of his friend Crassous, w.e have no means of ascertaining, and are not called upon to determine. Even if the notes did not- come into possession of Crassous as bailee, we think, under the circumstances of this case, Thebaud should have proved that Crassous paid value for them. There is no proof, we think, that he ever paid •for them, and we think, as a matter of fact, that he did not pay for them.
The order or decree entered on the referee’s report must be so far modified, as to require the receiver to pay over the pro- ■ ceeds of the notes to the plaintiffs instead of the defendant Thebaud.